UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES TRAYZON GILBERT,<br><br>   Plaintiff,<br><br>  v.<br><br>KATHLEEN ALLISON, et.al.,<br><br>   Defendants. | Case No.: 1:19-cv-01464-NONE-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 45) |

  Plaintiff Charles Trayzon Gilbert is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

  Currently before the Court is Defendants' motion for summary judgment, filed December 22, 2020.

## I.

## RELEVANT HISTORY

  This action is proceeding against Defendants M. Wood, E. Gonzalez, and V. Gonzalez for failure to protect in violation of the Eighth Amendment.

  On May 11, 2020, Defendants filed an answer to the complaint.

  On May 12, 2020, the Court issued the discovery and scheduling order.

After an unsuccessful settlement conference, the Court issued an amended discovery and scheduling order on September 23, 2020.

On December 22, 2020, Defendants filed the instant motion for summary judgment for failure to exhaust the administrative remedies.

Plaintiff filed an opposition on January 7, 2021, and Defendants filed a timely reply on February 3, 2021.

## II.

## LEGAL STANDARD

### A.   Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory unless unavailable. Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

Section 1997e(a) also requires "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effective without imposing some orderly structure on the course of its proceedings." Id. at 90-91. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

The failure to exhaust is an affirmative defense, and the defendant or defendants bear the burden of raising and proving the absence of exhaustion. Jones v. Bock, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendant or defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. Id.

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at c1166; Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010). "The evidence must be viewed in the light most favorable to the nonmoving party." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2014).

Initially, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. If the defendant meets that burden, the burden of production then shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. However, the ultimate burden of proof on the issue of administrative exhaustion remains with the defendant. Id. "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a

defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

### III.

### DISCUSSION

A.  **Summary of CDCR's Administrative Appeal Process**[1]

A prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") satisfies the administrative exhaustion requirement for a non-medical appeal or grievance by following the procedures set forth in California Code of Regulations, title 15, §§ 3084-3084.9.

California Code of Regulations, title 15, § 3084.1(a) provides that "[a]ny inmate … under [CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate … can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." An inmate is required to use a CDCR Form 602 to "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, § 3084.2(a). An inmate is limited to one issue, or related set of issues, per each CDCR Form 602 and the inmate "shall state all facts known and available to [them] regarding the issue being appealed at the time of submitting" the CDCR Form 602. Cal. Code Regs. tit. 15, § 3084.2(a)(1) & (a)(4). Further, the inmate "shall list all staff member(s) involved and … describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3). If known, the inmate must include the staff member's last name, first initial, title or position, and the dates of the staff member's involvement in the issue being appealed. Id. If the inmate does not know the staff member's identifying information, the inmate is required to "provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Id.

Unless the inmate grievance falls within one of the exceptions stated in California Code of Regulations, title 15, §§ 3084.7(b)(1)-(2) and 3084.9, all inmate grievances are subject to a three-step

---

[1] On March 25, 2020, the grievance procedure outlined in § 3084.1, *et seq.*, was repealed effective June 1, 2020, as an emergency by the CDCR pursuant to Penal Code § 5058.3. *See* CCR, tit. 15, § 3084.1, ¶ 13 (June 26, 2020). However, the parties do not dispute that the events alleged in the first amended complaint took place before the repeal took effect.

1 administrative review process: (1) the first level of review; (2) the second level appeal to the Warden
2 of the prison or their designee; and (3) the third level appeal to the Secretary of CDCR, which is
3 conducted by the Secretary's designated representative under the supervision of the third level
4 Appeals Chief.  Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(a)-(d).  Unless the inmate grievance
5 deals with allegations of sexual violence or staff sexual misconduct, an inmate must submit the CDCR
6 Form 602 and all supporting documentation to each the three levels of review within 30 calendar days
7 of the occurrence of the event or decision being appealed, of the inmate first discovering the action or
8 decision being appealed, or of the inmate receiving an unsatisfactory departmental response to a
9 submitted administrative appeal.  Cal. Code Regs. tit. 15, §§ 3084.2(b)-(e), 3084.3, 3084.6(a)(2),
10 3084.8(b).  When an inmate submits an administrative appeal at any of the three levels of review, the
11 reviewer is required to reject the appeal, cancel the appeal, or issue a decision on the merits of the
12 appeal within the applicable time limits.  Cal. Code Regs. tit. 15, §§ 3084.6(a)-(c), 3084.8(c)-(e).  If an
13 inmate's administrative appeal is rejected, the inmate is to be provided clear instructions about how to
14 cure the appeal's defects.  Cal. Code Regs. tit. 15, §§ 3084.5(b)(3), 3084.6(a)(1).  If an inmate's
15 administrative appeal is cancelled, the inmate can separately appeal the cancellation decision.  Cal.
16 Code Regs. tit. 15, § 3084.6(a)(3) & (e).

17       **B.**     **Summary of Relevant Factual Allegations of Plaintiff's Complaint**

18       On April 12, 2018, as Plaintiff returned to his assigned housing unit, he was accosted from
19 behind by a group of Hispanic gang members and called a "fucking rapist."  Plaintiff was sliced across
20 his back with a sharp weapon.  Plaintiff ran away and alerted Defendants E. Gonzalez and V.
21 Gonzalez of the attack.  After taking note of Plaintiff's injuries, the two Defendants placed Plaintiff
22 inside one of the stand-up cages to be examined by medical staff who treated and documented his
23 injury.  Defendant M. Wood arrived and advised Plaintiff that he had been "cleared" to return to his
24 cell.  Plaintiff pleaded with Defendants E. Gonzalez, V. Gonzalez, and M. Wood to be removed from
25 the assigned housing unit and rehoused in a safe environment.  However, E. Gonzalez, V. Gonzalez,
26 and M. Woods proceeded to seize Plaintiff by the arms and legs, lifted him off his feet and carried him
27 up a flight of stairs to the second tier where they tossed him inside his assigned cell.
28

**C.      Statement of Undisputed Facts[2]**

1.      Plaintiff is an inmate of the California Department of Corrections and Rehabilitation (CDCR) and he filed this action on October 17, 2019.  (First Am. Compl., ECF No. 8 at 1.)

2.      CDCER has an administrative appeal process whereby inmates, such as Plaintiff, may appeal any policy, decision, action, condition, or omission by CDCR or CDCR staff that has a material adverse effect upon the inmate's health, safety or welfare.  (Cal. Code Regs.  tit. 15, §§ 3084-3084.9; Declaration of Howard E. Moseley (Moseley Decl.) ¶¶ 2-3.)

3.      Plaintiff was an inmate at Kern Valley State Prison (KVSP) from December 18, 2017 until May 7, 2018.  (Pl.'s Resp. to Defs.' Req. for Admiss., No. 1, attached to Declaration of Arthur B. Mark III (Mark Decl.) Ex. A.)

4.      CDCR's inmate appeals process was available to Plaintiff when he was an inmate at KVSP and he utilized that process. (Pl.'s  Resp. to Defs.' Req. for Admiss., Nos. 2-3.)

5.      Plaintiff was an inmate at California Men's Colony (CMC) from May 7, 2018 until December 5, 2018.  (Pl.'s Resp. to Defs.' Req. for Admiss., No. 4.)

6.      To a degree, CDCR's inmate appeal process was available to Plaintiff when he was an inmate at CMC and he utilized that process.  (Pl.'s Resp. to Defs.' Req. for Admiss., Nos. 4-5.)

7.      Plaintiff was an inmate at Richard J. Donovan Facility (RJD) from December 6, 2018 until April 3, 2019.  (Pl.'s Resp. to Defs.' Req. for Admiss., No. 7.)

8.      CDCR's inmate appeals process was available to Plaintiff when he was an inmate at RJD and he utilized that process.  (Pl.'s Resp. to Defs.' Req. for Admiss., Nos. 8-9.)[3]

9.      Plaintiff was an inmate at California State Prison-Corcoran (CSP-Corcoran) from April 3, 2019 until May 15, 2019.  (Pl.'s Resp. to Defs.' Req. for Admiss., No. 10.)

10.     CDCR's inmate appeals process was available to Plaintiff when he was an inmate at CSP-Corcoran and he utilized that process.  (Pl.'s Resp. to Defs.' Req. for Admiss., Nos. 11-12.)

11.     Plaintiff was an inmate at California State Prison Los Angeles County (LAC) from

---

[2] Hereinafter referred to as "UDF."

[3] Plaintiff did not respond to Request No. 8, and it therefore deemed admitted.  Fed. R. Civ. P. 36.

1  May 15, 2019 until February 27, 2020.  (Pl.'s Resp. to Defs.' Req. for Admiss., No. 13.)

2        12.    CDCR's inmate appeals process was available to Plaintiff when he was an inmate at
3  LAC and he utilized that process.  (Pl.'s Resp. to Defs.' Req. for Admiss., Nos. 14-15.)

4        13.    Plaintiff identified one inmate appeal that he claims exhausted his administrative
5  remedies for his claims against the Defendants in this case: appeal log number KVSP-18-01066/CMC
6  18-01670.  (Pl.'s Resp. to Def. M. Wood's First set of Interog., No. 1; Pl.'s Resp. to Def. V.
7  Gonzalez's First Set of Interog., No. 1; Pl.'s Resp. to Def. E. Gonzalez's First Set of Interrog., No. 1.)

8        14.    Plaintiff submitted appeal log number KVSP-19-01066/CMC 18-01670 on April 29,
9  2018.  (Pl.'s Resp. to Defs.' Req. for Production of Documents.)

10        15.    To administratively exhaust CDCR's appeal process, inmates must proceed through
11  three levels of review; they must receive a review of their appeal and a decision from CDCR's Office
12  of Appeals (OOA) (final level of review).  (Cal. Code Regs. tit. 15, §§ 3084.1(b); 3084.7 (2018);
13  Moseley Decl. ¶ 2.)

14        16.    Plaintiff did not exhaust his appeal KVSP-18-01066/CMC 18-01670 through the third
15  level of review until February 6, 2020.  (Moseley Decl. ¶¶ 3-6; Exs. A-B; Pl.'s Resp. to Defs.' Req. for
16  Production of Documents.)

17        **D.**    **Evidence to be Considered**

18  At the outset, Defendants protest that some of the documentary evidence attached to Plaintiff's
19  opposition was not disclosed during discovery.  Defendants therefore argue that the evidence should
20  not be considered.  Though not specifically presented as such, the Court interprets this objection as a
21  motion for evidentiary sanctions under Rule 37(c).  Plaintiff does not dispute that he did not disclose
22  the documentation/information objected to by Defendants.

23  When a party fails to disclose information during discovery, "the party is not allowed to use
24  that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was
25  substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Rule 37(c)(1) sanctions have been
26  described 'as a self-executing, automatic sanction to provide a strong inducement for disclosure of
27  material.' " Bonzani v. Shinseki, No. 2:11–cv–0007–EFB, 2014 WL 66529, at *3 (E.D. Cal. Jan. 8,
28

7

2014) (quoting Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001)); see also Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 827 (9th Cir. 2011).

"The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." R&R Sails, Inc. v. Ins. Co. of Pa., 673 F.3d 1240, 1246 (9th Cir. 2012).  Nevertheless, evidence preclusion may be a "harsh sanction," particularly where it will amount to dismissal of a claim. Id. at 1247. In such circumstances, not only must a district court find a failure to disclose is not substantially justified or harmless, it is also "required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith," as well as whether there are lesser available sanctions. Id. at 1247–48 (brackets and internal quotations omitted); Henry v. Gill Indus., Inc., 983 F.2d 943, 946 (9th Cir. 1993) (holding that, in order to justify dismissal under Rule 37, "the losing party's non-compliance must be due to willfulness, fault, or bad faith"); Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983) (terminating sanctions "authorized only where the failure to comply is due to willfulness, bad faith, or fault of the party").

While it appears Defendants' objection is correct, the Court finds that preclusion of the evidence is too harsh a sanction in this instance.  The Court does not find and Defendants do not argue that Plaintiff acted in bad faith in failing to disclose the documentation/information.  In addition, after reviewing the record, it does not appear that Defendants would be prejudiced if the motion is decided with consideration of the documentation.  Indeed, Defendants were granted two extensions of time to file a reply and filed a detailed reply on February 3, 2021.  Defendants' reply specifically addresses the documentation attached to Plaintiff's opposition and Defendants argue it does not preclude the finding that he failed to exhaust the administrative remedies.  Accordingly, the Court will consider the documentation/information supplied by Plaintiff in his opposition in determining whether Defendants' motion for summary judgment should be granted.

### E.   Analysis of Defendants' Motion

Defendants argue that it is undisputed that an administrative process was available to Plaintiff and he failed to seek third level review of the only relevant inmate appeal until December 3, 2019, after Plaintiff filed the instant action on October 17, 2019.

In opposition, Plaintiff argues that the administrative process was not available to him to exhaust inmate appeal log number KVSP-18-01066/CMC 18-01670, and contrary to Defendants' argument, appeal KVSP-18-01066/CMC 18-01670 was first received by the OOA on December 3, 2018, and Plaintiff's attempt at review by the third level were thwarted for fourteen months. (Pl.'s Opp'n at 2, ECF No. 47.) The OOA refused to process appeal KVSP-18-01066/CMC 18-01670 on five different occasions: December 3, 2018, March 28, 2019, July 1, 2019, August 22, 2019, and October 16, 2019. (Id. at 3.) Each time the OOA returned appeal KVSP-18-01066/CMC 18-01670 to Plaintiff, and the reasons for doing so failed to address or acknowledge the pertinent appeal at issue. Rather, the OOA focused on the property attached thereto, and attacked those without reason, erroneously making the attachments the subject of Plaintiff's appeal. (Id.) The second level issued its response to appeal KVSP-18-01066/CMC 18-01670 on August 24, 2018, and the OOA received the appeal on December 3, 2018, but did not process or issue a response until February 6, 2020. (Id.) The OOA failed to acknowledge the long delay or point to a violation of the appeals process which might have warranted rejection. (Id. at 3, 13.) The OOA never sent Plaintiff a letter regarding the appeal. (Id. at 14.)

Here, it is undisputed that appeal log number KVSP-18-01066/CMC 18-01670 is the only appeal relevant to the claims at issue in this action. (UDF 13.) Plaintiff submitted appeal log number KVSP-19-01066/CMC 18-01670 on April 29, 2018. (UDF 14.) Plaintiff did not exhaust his appeal KVSP-18-01066/CMC 18-01670 through the third level of review until February 6, 2020. (UDF 16.)

Plaintiff argues that he initially submitted KVSP-18-01066/CMC 18-01670 to the OOA on December3, 2018. However, Defendants submit that Plaintiff did not submit KVSP-18-01066/CMC 18-01670 on December 3, 2018. Rather, Plaintiff submitted an original CDCR Form 602 for a different appeal-appeal number CMC 18-03426—with a photocopy of the CDCR Form 602 related to Institutional Log No. KVSP-18-01066/CMC 18-01670 attached. (Moseley Suppl. Decl. ¶¶ 1-2, Ex. A, ECF No. 56-2.) As such, the OOA considered the attachment an "exhibit" to the "original" appeal and stamped the attached copy as "received" as part of the "original" appeal number CMC 18-03426. (Id.) CDCR regulations, Cal. Code of Regulations, title 15, section 3084.2, require submission of an "original" Form 602. (Id.) Therefore, OOA stamped as received on December 3, 2018, and logged

1  CMC-18-03426 into the tracking system, assigned it an OOA log number 1814560 and then cancelled
2  it because Plaintiff was seeking review of an appeal he had withdrawn at the lower level.  (Id.)
3  Therefore, Plaintiff's contention that he submitted appeal Log No. KVSP-18-01066/CMC 18-01670 at
4  the third level on December 3, 2018, is not substantiated.

5  Even after received the cancellation letter for appeal number CMC-18-03426 Plaintiff still did
6  not submit number KVSP-18-01066 properly for a third level review.  Rather, Plaintiff re-submitted
7  the original of the rejected appeal number 1814560 (CMC-18-03426) to the third level on March 28,
8  2019, again attaching a copy of number KVSP-18-01066 as an exhibit.  (Moseley Suppl. Decl. ¶ 3, Ex.
9  B.)  On June 12, 2019, the OOA again rejected appeal CMC-18-03426 because it had been cancelled,
10 and could not be resubmitted.  (Id.)

11 Thereafter, on July 1, 2019, the OOA received another original CDCR Form 602 from Plaintiff
12 alleging that OOA had "improperly cancelled Institutional Log No. KVSP-18-01066/CMC-18-
13 01670." (Moseley Suppl. Decl. ¶ 4, Ex. C.)  OOA assigned this appeal as Appeal Log No. 1907651.
14 "Because the photocopies of Institutional Log No. KVSP-18-01066/CMC-18-01670 were treated by
15 the OOA as attachments when submitted on December 3, 2018 (as described above), the OOA looked
16 to see if the matter had been reviewed at the institutional level and when the OOA determined it had
17 not, the OOA rejected the matter for bypassing the lower levels of review.  (Id. at 4.)

18 Then, on October 16, 2019, Plaintiff resubmitted OOA Appeal Log No. 1907651, arguing that
19 it had been cancelled.  (Moseley Suppl. Decl. ¶ 5, Ex. D.)  However, OOA had not cancelled that
20 appeal but rejected it for bypassing lower levels of review, and OOA rejected Plaintiff's attempted
21 appeal of a "cancellation."  (Id.)  OOA explained in a letter to Plaintiff that his attempt to "appeal" the
22 "cancellation" of Institutional Log No. KVSP-18-01066/CMC-18-01670 was premature because OOA
23 had not cancelled that appeal (and it had not even been submitted by Plaintiff for a third level review
24 at that point).  (Id. ¶¶ 3-4, Exs. A-D.)

25 As previously stated, Plaintiff finally submitted Institutional Log No. KVSP-18-01066/CMC-
26 18-01670 to the OOA as a stand-alone appeal (i.e., not an attachment to another appeal).  (Moseley
27 Suppl. Decl. ¶ 6.)  It was logged in and assigned Appeal Log No. 191485, and OOA issued a decision
28 on February 6, 2020.  (Id.; see also Moseley Decl. ECF No. 45-4.)  Therefore, based on the evidence

submitted by Defendants, it was Plaintiff's actions and choice in what to submit to OOA, not the action by OOA, which delayed the proper resubmission of Log No. KVSP-18-01066 for review at the third level until December 3, 2019.  There is simply no evidence to support Plaintiff's contention that he was thwarted by CDCR in his attempts to utilize the appeal process.

Furthermore, the case authorities cited by Plaintiff in support of his opposition and arguments, are inapposite.  In Andres v. Marshall, 867 F.3d 1076 (9th Cir. 2017), unlike here, the plaintiff submitted a grievance properly, but the prison lost it.  See In re Andres, 244 Cal. App.4th 1383 (2016) (companion state court case reciting evidence of inmate's submission and prison's loss of the grievance).  In both Robinson v. Superintendent Rockview SCT, 831 F.3d 148, 151 (3d Cir. 2016), and Boyd v. Corr. Corp. of Am., 380 F.3d 989, 996 (6th Cir. 2004), the inmates submitted proper grievances to which the prison did not respond.  However, in this case, Plaintiff has not demonstrated that he submitted the relevant grievance for third level review that was not responded to.  Rather, the undisputed evidence demonstrates to the contrary.

Additionally, in Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002), it was determined that the administrative process was not rendered unavailable to the inmate because he failed to take advantage of a subsequent opportunity to cure the deficiency and exhaust.  Lately, Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) does not assist Plaintiff because the Court affirmed the dismissal due to the inmate's failure to exhaust through the final level after receiving a response at the lower level.

Based on the foregoing, Plaintiff has failed to demonstrate that the administrative appeal process was rendered "unavailable" to him, and Defendants' motion for summary judgment should be granted.

## IV.
## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and
2. The instant action be dismissed, without prejudice, for failure to exhaust the administrative remedies.

11

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 22, 2021**

UNITED STATES MAGISTRATE JUDGE